UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DWIGHT ANDRAE SMITH,

                     Petitioner,

-vs-

MERRICK B. GARLAND, in his official capacity as
Attorney General of the United States,

ALEJANDRO MAYORKAS, in his official capacity as
Secretary, U.S. Department of Homeland Security,

THOMAS FEELEY, in his official capacity as Field
Office Director, Buffalo Field Office, U.S. Immigration &
Customs Enforcement, and

JEFFREY J. SEARLS, in his official capacity as
Acting Assistant Field Office Director and Administrator,
Buffalo Federal Detention Facility,

                     Respondents.
_____

DECISION and ORDER

21-CV-6455 (CJS)

Dwight Andrae Smith ("Petitioner"), through counsel, commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241") challenging his continued detention pursuant to 8 U.S.C. § 1226(c) by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), pending the completion of removal proceedings against him. Pet., June 21, 2021, ECF No. 1. For the reasons discussed below, the Court finds that Petitioner has failed to demonstrate that his detention has been unreasonably prolonged, and his application for habeas relief [ECF No. 1] is therefore denied.

1

In addition, purely as a procedural matter and notwithstanding Petitioner's argument to the contrary, the Court notes that the only proper respondent in this matter is Jeffrey Searls, the Assistant Field Office Director and Administrator of the Buffalo Federal Detention Facility. "As the person with direct control over Petitioner's detention, he is the proper respondent given Petitioner's requested relief." *Quintanilla Mejia v. Barr*, No. 20-CV-6434-FPG, 2020 WL 5947139, at *4 (W.D.N.Y. Oct. 7, 2020) (citing *Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019)). Accordingly, the Clerk of Court is directed to amend the caption to list Jeffrey Searls, in his official capacity as Acting Assistant Field Office Director and Administrator of the Buffalo Federal Detention Facility, as the sole respondent to this action and to dismiss the other named respondents.

## BACKGROUND[1]

Petitioner is a native of Jamaica who "arrived in the United States at or near an unknown place, on or about an unknown date." Pet. at ¶ 23. Between 2010 and 2017, he had multiple contacts with the criminal justice system in this country, including being placed on probation as a juvenile delinquent twice in 2010, and being convicted in New York state courts of disorderly conduct (2011), trespass (2011, 2012, and twice in 2013), forcible touching (2013), attempted robbery in the third degree (2017), and attempted criminal

---

[1] Consistent with 28 U.S.C. § 2243 through § 2247, courts hearing an application under § 2241 may consider affidavits and documentary evidence such as records from any underlying proceeding. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The following background is drawn from Petitioner's submission, as well as Respondent's submissions of affidavits from ICE Deportation Officer Silvestre Talavera, an individual familiar with the facts and circumstances of Petitioner's immigration proceedings, and Michael K. Ball, Assistant Officer in Charge of the Buffalo, NY Field Office, as well as records from the underlying proceedings themselves. Talavera Decl., Aug. 23, 2021, ECF No. 4-1; Ball Decl., Aug. 23, 2021, ECF No. 4-3; Resp. (Ex. A), Aug. 23, 2021, ECF No. 4-2.

possession of a weapon in the second degree (2017). Talavera Decl., ¶ 6–17, Aug. 23, 2021, ECF No. 4-1. For his attempted robbery conviction, Petitioner received an indeterminate sentence of one to three years imprisonment; for his attempted criminal possession of a weapon conviction, he was sentenced to four years, six months imprisonment followed by four years post-release supervision to run concurrent with the sentence for attempted robbery. Talavera Decl. at ¶ 17.

While Petitioner was still serving prison time on his New York state convictions, DHS initiated removal proceedings by serving him with a "Notice to Appear." Pet. (Ex. 4), June 21, 2021, ECF No. 1-4. The notice alleged that Petitioner is not a citizen or national of the United States; is a native and citizen of Jamaica; arrived in the United States at or near an unknown place, on or about an unknown date; was not admitted to or paroled into the United States after inspection by an immigration officer; and was convicted of the crime of attempted robbery in the third degree. Pet. (Ex. 4) at 4. On the basis of those allegations, Petitioner was charged with being subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien who has been convicted of a crime of moral turpitude, and under 8 U.S.C. § 1182(a)(6)(A)(i) for being an alien present in the United States without being admitted or paroled. Pet. (Ex. 4) at 4.

On November 6, 2020, Petitioner was released from New York state custody and taken into custody by DHS. Pet. at ¶ 26. Since that time, he has been detained at the Buffalo Federal Detention Facility ("BFDF"). Pet. at ¶ 26. On December 7, 2020, DHS conducted a review of the totality of circumstances of Petitioner's case and determined that he would remain detained because of his conviction for, among other things, attempted felony

robbery. Resp. (Ex. A), 113, Aug. 23, 2021, ECF No. 4-2. Petitioner requested that the Immigration Judge ("IJ") review the custody determination, but there is no indication in the record as to whether such a review occurred. *Id.* On December 23, 2020, the IJ rendered a decision on Petitioner's application for asylum or, in the alternative, deferral of his removal under the Convention Against Torture ("C.A.T."). Resp. (Ex. A) at 125–134. The IJ found that Petitioner was barred from eligibility for asylum because he did not file his application within one year of arriving in the United States, and because he committed an aggravated felony. Resp. (Ex. A) at 126. The IJ also denied Petitioner's application for deferral of removal under the C.A.T. because each of the three bases for Petitioner's assertions that he would be tortured upon removal to Jamaica – his mental health issues, the fact that he is HIV positive, and his bi-sexuality – are without merit. Resp. (Ex. A) at 134. Petitioner was therefore ordered removed from this country. Resp. (Ex. A) at 122.

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On August 12, 2021, the BIA found that the IJ's analysis of Petitioner's claims under the C.A.T. was flawed, and remanded the matter for reconsideration under the proper standard. Resp. (Ex. A) at 148–151. After reconsidering the matter, the IJ again ordered Petitioner removed. Letter, Mar. 24, 2022, ECF No. 7. Petitioner appealed the IJ's order of removal a second time, and the BIA remanded the matter back to the IJ on March 24, 2022. *Id.* To the Court's knowledge, there have been no further procedural developments in his removal proceedings since that time.

Now before the Court is Petitioner's application for habeas relief pursuant to 28 U.S.C. § 2241. Specifically, Petitioner maintains that his detention "has become

4

unreasonably prolonged and continued detention without a constitutionally adequate bond proceeding will erroneously deprive him of his strong interest in liberty," and violates his right to procedural due process. Pet. at ¶ 57–58 (internal quotation marks and citation omitted). Consequently, Petitioner asks the Court to "issue a conditional writ of habeas corpus requiring Respondents to provide Petitioner with a constitutionally adequate, individualized hearing before an impartial adjudicator at which Respondents bear the burden of establishing by clear and convincing evidence that the Petitioner is a danger to the community or a flight risk . . . ." Respondents oppose the petition, and maintain the petition should be denied "[b]ecause noncitizens have no right to remain in the United States, and certainly no right to be free while challenging their removal following their unlawful entry . . . ." Resp., 2, Aug. 23, 2021, ECF No. 5.

LEGAL STANDARD

The Immigration and Nationality Act is codified in title 8 of the United States Code. With respect to immigration matters such as those underlying the present habeas application, 8 U.S.C. § 1229a(a)(1) authorizes an Immigration Judge to conduct proceedings on behalf of the Attorney General to decide upon the inadmissibility or deportability of an alien. An alien placed in such removal proceedings may be charged with any applicable ground of inadmissibility under § 1182(a), or any applicable ground of deportability under § 1227. § 1229a(a)(2). An alien ordered removed has the right to appeal the IJ's decision to the Board of Immigration Appeals, "except that no appeal shall lie from an order of removal entered in absentia." 8 C.F.R. § 1240.15. Judicial review of removal orders is available exclusively through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252.

5

Federal district courts, then, have limited jurisdiction with respect to matters involving removal proceedings. In particular, district courts retain jurisdiction under 28 U.S.C. § 2241 to review "purely legal statutory and constitutional claims" regarding removal proceedings, but jurisdiction does not extend to "discretionary determinations" by Immigration Judges and the Board of Immigration Appeals. *Sol v. I.N.S.*, 274 F.3d 648, 651 (2d Cir. 2001). District courts are authorized to grant habeas relief under § 2241 only to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States."

DISCUSSION

There is no dispute here that Petitioner's detention is statutorily required on two grounds identified by 8 U.S.C. § 1226(c): having committed an offense involving moral turpitude covered by § 1182(a)(2), and being inadmissible under § 1182(a)(3)(B). *See, e.g.,* Pet. at ¶ 3–4 (Petitioner "is currently subjected to mandatory to immigration detention . . . . [He] petitions this Court to challenge the constitutionality of the statutory provisions that mandate his detention."). As the Supreme Court has explained:

> Section 1226(c) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, and it sprang from a "concer[n] that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." *Demore v. Kim*, 538 U.S. 510, 513 (2003). To address this problem, Congress mandated that aliens who were thought to pose a heightened risk be arrested and detained without a chance to apply for release on bond or parole.

> Section 1226(c) consists of two paragraphs, one on the decision to take an alien into "[c]ustody" and another on the alien's subsequent "[r]elease." The first paragraph (on custody) sets out four categories of covered aliens, namely, those who are inadmissible or deportable on specified grounds. It then provides that the Secretary must take any alien falling into one of these categories "into custody" "when the alien is released" from criminal custody.

> The second paragraph (on release from immigration custody) states that "an alien described in paragraph (1)" may be released "only if [the Secretary] decides" that release is "necessary to provide protection" for witnesses or others cooperating with a criminal investigation, or their relatives or associates.

*Nielsen v. Preap*, 139 S. Ct. 954, 960 (2019) (footnote omitted). Thus, Petitioner argues not that his detention violates the statute, but that his prolonged detention while he awaits the outcome of his removal proceedings is unconstitutional.

*Legal Principles*

The analysis must start with the recognition that *in general* the detention of criminal aliens like Petitioner under § 1226(c), without a bond hearing, for the entire period of their removal proceedings does *not* violate due process. *See Demore*, 538 U.S. at 526 (indicating that it has been the Supreme Court's "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."). Indeed, the Supreme Court in *Demore* stated that "this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522. In emphasizing that aliens do not have the same due process rights as citizens, the Court stated:

> It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process. As we said more than a century ago, deportation proceedings would be [in] vain if those accused could not be held in custody pending the inquiry into their true character.

*Demore*, 538 U.S. at 523 (citations and internal quotation marks omitted).

7

In 2015, the Second Circuit held that "in order to avoid significant constitutional concerns surrounding the application of section 1226(c), it must be read to contain an implicit temporal limitation," and that "mandatory detention longer than six months without a bond hearing affronts due process." *Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015). The Circuit Court indicated that after six months of detention under § 1226(c), an alien "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616. The *Lora* panel also suggested that *Demore's* holding, which found no procedural due process violation, was somewhat limited to its facts (i.e., a relatively brief detention), and stated that that the length of time it was taking the government to complete removal proceedings had significantly increased since *Demore* was decided. *Lora*, 804 F.3d at 605.

However, in *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018), the Supreme Court found that the Immigration and Nationality Act does not contain an implicit six-month time limit at which point a bond hearing must be held. *Jennings*, 138 S.Ct. at 844. As a result, the Supreme Court granted certiorari in *Lora*, vacated the judgment, and remanded the case for "further consideration" in light of its decision in *Jennings*. *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

Subsequently, another judge of this district described the post-*Jennings* and post-*Lora* state of the law in this Circuit concerning procedural due process challenges under 8 U.S.C. § 1226(c) as follows:

> The Second Circuit has not addressed, post-*Jennings* and post-*Lora*, the standard to be utilized by courts in addressing procedural due process claims for aliens detained in the immigrant habeas context. However, the

8

overwhelming majority of district courts within the Circuit to have addressed the issue in the context of 8 U.S.C. § 1226(c)—pertaining to the detention of criminal aliens—have adopted a case-by-case approach where courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.' . . . .

The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified in the § 1226(c) context can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral* [*v. Decker*, 331 F. Supp.3d 255, 261 (S.D.N.Y. 2018)]. These factors require consideration of multiple variables in determining whether a detainee has been held for an unreasonably lengthy period of time. While detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months . . . the sheer length of the proceedings is not alone determinative of reasonableness . . . .

*Abdi v. McAleenan*, 405 F. Supp.3d 467, 475–77 (W.D.N.Y. 2019) (most internal citations and quotation marks omitted).

*Application*

With these principles in mind, the question now before this Court is whether, in light of the factors set forth above, Petitioner's continued detention since November 6, 2020 under § 1226(c), without a bond hearing, has become "unreasonable or unjustified" such that it violates his right to procedural due process, and, if so, what remedy is due. With regard

to the first issue, the Court applies the multi-factor test discussed above.

Applying this test, the Court finds that the first factor, the length of time the petitioner has been detained, is neutral. Petitioner has been detained for over seventeen months, which is obviously a significant amount of time. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) ("as the period of . . . confinement grows" so do the required procedural protections). On the other hand, Petitioner's detention at the BFDF is ultimately the product of his undisputed multiple criminal convictions in New York state court, including one for attempted robbery, which he conceded to the IJ to be "a particularly serious crime." Resp. (Ex. A) at 126. Petitioner's extensive criminal history, and of his admitted unlawful entry into the United States (Pet. at ¶ 23), each indicate voluntary conduct which placed Petitioner in a class of mandatory detainees under § 1226(c).

The second factor, the party responsible for the delay, is neutral since neither Petitioner nor Respondent has done anything to improperly delay the completion of removal proceedings. Rather, the majority of the delay appears attributable to the length of time it has taken the BIA to decide Petitioner's appeals, which is out of the parties' control.

The third factor, whether Petitioner has asserted a defense to his removal, weighs in favor of Petitioner, since he contends that he is entitled to a deferral of his removal under the C.A.T.

The fourth factor, the length of Petitioner's detention in relation to his criminal sentence, weighs in Respondents' favor, since Petitioner has thus far been detained for only approximately one-third of the length of his imprisonment for his criminal convictions.

The fifth factor, whether the detention facility is meaningfully different from a penal institution, also weighs slightly in Respondents' favor. In his affidavit, Officer Michael K. Ball states that "[p]ersons held at BFDF do not face the same level of restrictions typical of prison restrictions on inmates." Ball Decl. at ¶ 9. For instance, detainees can obtain employment, and move throughout the facility without being required to wear handcuffs or legcuffs. Ball Decl. at ¶ 9, 16. *Compare Velasco Lopez v. Decker*, 978 F.3d 842, 850–51 (2d Cir. 2020) (finding no meaningful difference where the petitioner, detained at the discretion of the IJ under § 1226(a), was "incarcerated under conditions indistinguishable from those imposed on criminal defendants" but with far less procedural protection). Nevertheless, the conditions at BFDF weigh only slightly in Respondents' favor because, as Petitioner notes in his reply brief, BFDF does still place significant restriction on his liberties.

The sixth factor, the nature of the crimes committed by the petitioner, weighs against Petitioner, since they involve multiple instances of serious conduct and a pattern of disregard for the law and the property rights of others dating back to his illegal entry into this country, or at least as far back as his juvenile delinquency in 2010.

Lastly, the seventh factor, whether Petitioner's detention is near conclusion, is neutral. At present, the matter is once again before the IJ who, historically in this case, has acted quickly to adjudicate Petitioner's case. Although Petitioner may of right choose to prolong his detention by pursuing legitimate avenues of appeal before either the BIA or the Second Circuit, it is also true that Petitioner could opt to end his detention by consenting to his removal.

CONCLUSION

Having weighed and considered all of the factors, the Court finds that Petitioner has failed to demonstrate that his detention has become unreasonably prolonged. Therefore, it is hereby

ORDERED, Petitioner's application for habeas relief [ECF No. 1] is denied without prejudice; and it is further

ORDERED, that the Clerk of the Court is directed to amend the caption to list Jeffrey Searls, in his official capacity as Acting Assistant Field Office Director and Administrator of the Buffalo Federal Detention Facility, as the sole respondent to this action and to dismiss the other named respondents; and it is further

ORDERED that the Clerk of the Court enter judgment and close this case.

So Ordered.

Dated:        Rochester, New York
              April 25, 2022

                              ENTER:

                              CHARLES J. SIRAGUSA
                              United States District Judge